MR. JUSTICE GULBRANDSON,
dissenting:
I respectfully dissent.
The parties agree that Section 19-7-308, MCA, is the touchstone for determining Bay’s eligibility for a service retirement benefit. This statute, generally referred to as the “coordination statute,” was introduced as House Bill 300 in 1979 and was adopted primarily to assist individuals like Bay who might otherwise lose an opportunity to obtain benefits if local government consolidation effectively terminated one’s eligibility for either sheriffs’ or police officers’ retirement benefits. Although the statute coordinates bene *268 fits between the two retirement systems, the legislature intended that the statute be codified in Title 19, chapter 7 of the Montana Code Annotated, which is devoted solely to laws governing sheriffs’ retirement. See 1979 Mont. Laws ch. 122, Sec. 3.
Subsection (1) of Section 19-7-308 merely defines the standard of eligibility of a service retirement. It does not specify the terms of any benefits awarded to a retiree. The parties agree that subsection (1) is used only to determine whether Bay’s combined service record “satisfies the minimum membership service requirement of the system to which he last made contributions.” In this case, Bay contributed to the police officer’s retirement fund for the five years preceding his retirement. His twenty-nine years of combined service as a deputy sheriff and a policeman clearly satisfies the twenty year minimum eligibility period for earning a police officer’s pension.
To determine the appropriate benefit package, one must first refer to Section 19-9-404, MCA, before proceeding to subsection (2) and (3) of Section 19-7-308. Section 19-9-404, which appeared as Section Two of House Bill 300, 1979 Mont. Legis. Sess., and is codified as part of the laws governing police officers’ retirement, expressly provides that “[a] law enforcement officer who has combined service in the municipal police officers’ retirement system and the sheriffs’ retirement system because of a city-county consolidation, as provided in 191-7-308, is eligible for benefits as provided in 19-7-308.” (Emphasis added.) This section indicates that, at the very least, a law enforcement officer whose service spans obligations as a deputy sheriff and as a municipal policeman is not entitled to the full benefits of a retired policeman.
Once eligibility for a service retirement benefit has been determined, the actual benefit can be calculated. Section 19-7-308(3) provides that the retirement benefits are calculated separately for each retirement system based on the service credited under each system. The base salary used to *269 calculate benefits is the highest salary earned while the retiree was a member of either system. In Bay’s case, his highest salary was $1,565 per month, earned during his tenure as a policeman. Apparently this base was used to calculate benefits under both retirement systems. The $751 earned from sheriffs’ retirement is based on the $1,565 monthly salary and twenty-four years of service at the two percent contribution rate for sheriffs’ benefits. The $202 earned from police officers’ retirement is also based on the $1,565 salary, but reflects the remaining five years of service as a policeman at a contribution rate of two-and-one-half percent. None of the parties dispute the applicability of Section 19-7-308(3) or the particular calculations insofar as providing benefits to Bay alone are concerned. The dispute arises in providing a residual benefit for Bay’s beneficiary, his wife.
The point of dispute centers on differing interpretations of Subsection (2) of 19-7-308, which provides that [eligibility for disability retirement, death benefits, and a refund of contributions is governed by the provisions of the retirement system to which the officer last made contributions.” (Emphasis added.) Appellants take the position that the scope of the term “eligibility” as found in the statute is strictly confined to resolving potential conflicts in qualification for such things as death benefits. Moreover, appellants insist that Subsection (2) of 19-7-308 does not describe the method of calculating death benefits.
Appellants emphasize that each retirement system uses different eligibility criteria for determining beneficiaries. Under the sheriffs’ retirement system, for example, a sheriff may name a beneficiary by written declaration to the Public Employees’ Retirement Board, and may change the beneficiary in a like manner. See Section 19-7-602, MCA. If a beneficiary is designated, the retiree takes a reduced benefit to provide benefits for the beneficiary. Section 19-7-701, MCA. Unlike the sheriffs’ system, however, a member of the police system does not have the opportunity to desig *270 nate a beneficiary. Section 19-9-911, MCA, provides that some portion of the deceased retiree’s benefits will automatically be paid to the retiree’s surviving spouse and dependent minor children. Section 19-7-308(2), according to appellants, is designed to resolve conflicts when a retiree from a consolidated government law enforcement agency dies. For example: if Bay or another officer in a similar position died after having designated, under the sheriffs’ retirement system, a beneficiary other than his spouse, there would be a conflict, since a deceased policeman’s benefits must go to the spouse. Section 19-7-308(2) simply resolves the conflict by mandating that eligibility for death benefits be determined by the provisions of the retirement system to which the deceased last made contributions.
In Bay’s case, there was no problem with eligibility, because his designated beneficiary is his spouse. Nevertheless, the state authorities still had to decide how to calculate death benefits for Bay’s spouse. The method they used is taken from Section 19-7-701, MCA, which provides for optional retirement plans for beneficiaries of deceased sheriffs or sheriffs’ deputies. The Department presumably used this statutory scheme because the police officers’ retirement law contains no express provisions on the subject, and because Section 19-7-308, the coordination statute, is included as part of the sheriffs’ retirement law, thus leading one to believe that its provisions should be used to resolve ambiguities in the coordination statute. Appellants maintain that Bay must take some kind of reduction in the sheriffs’ portion of his total monthly benefit if he is to insure that his surviving beneficiary receives any amount from sheriffs’ retirement. Bay’s spouse will always receive the $202 portion based on his contributions to the police officers’ retirement system.
The majority interpret Section 19-7-308(2) to mean that any survivor’s benefits must be paid in accordance with the system to which Bay last made contributions — the policemen’s retirement system. This position obviously requires *271 one to interpret “eligibility” to include the method of calculating benefits.
According to the majority, if survivor’s benefits are to be calculated under police retirement, then attention is necessarily shifted to Section 19-9-911(2), MCA, which provides that death or survivor’s benefits will be paid to the surviving spouse in “a sum equal to one-half of the officer’s final average salary.” In Bay’s case, one-half of his final average salary, $1,565, is approximately $782. Because there are no provisions or requirements in the police retirement system for reducing service retirement benefits in order to provide for survivors benefits, the majority holds that he is entitled to a full $956 per month until his death.
The uncertainty arising from the undefined key term, “eligibility,” and the absence of clear provisions governing calculation of benefits for surviving beneficiaries of deceased retirees compels the conclusion that the coordination statute is at best ambiguous. According proper deference to the responsible agency’s interpretation of coordination statute, I would hold that appellants’ interpretation is both legally and actuarially sound.
I note that Section 19-9-104, refers to “members” of the police retirement system. A “member” of the police retirement system is defined as one who qualifies for the police officers’ service retirement. See Section 19-9-104(11). To have been a true member of the “system” in order to activate the benefit provisions of Section 19-9-911, Bay would have had to have been a policeman for twenty years, and he clearly does not meet this eligibility criterion.
Section 19-9-404, MCA, provides that eligibility for benefits for an individual in Bay’s situation is governed by the terms of the coordination statute, Section 19-7-308. The legal effect of interpreting Section 19-7-308(2) as broadly as the majority has done essentially incorporates the entire police officers’ retirement law into the coordination statute and effectively treats Bay as if he had been a policeman for twenty-nine years of his combined service as a sheriff and *272 as a policeman. Under the circumstances, I can only conclude that the substance of the coordination statute has been abrogated by the majority.
Although the legislative history behind the adoption of the coordination statute sheds little light on a correct interpretation of Section 19-7-308(2), there is substantial evidence that the sponsors of the legislation intended no financial impacts in the funding of the retirement systems, meaning no “windfall payments” to retirees. See Hearings on House Bill 300 Before the House Comm. on State Administration, 47th Mont. Leg. Sess. (Jan. 25, 1979) (statement of PERD administrator Lawrence Nachtsheim, appearing at request of bill sponsor Rep. Joe Quilici), Hearings on House Bill 300 Before the Senate Comm, on Local Government, 47th Mont. Leg. Sess. (Feb. 27, 1979) (statement of bill sponsor Rep. Joe Quilici).
It is obvious that Bay could qualify his previous service as a deputy sheriff under the police officers’ retirement system by contributing the actuarial cost of granting the service in that system. See Section 19-9-405, MCA. By adopting Section 19-9-405, MCA, the legislature recognized the actuarial costs of providing benefits under the police officers’ retirement systems, which is far more generous than the sheriffs’ system. To interpret Section 19-7-308 to allow Bay to reap full benefits without reduction for survivors benefits is tantamount to treating Bay as a policeman for twenty-nine years of service without having made corresponding contributions for the same period of time to the police officers’ retirement fund. Such a result is both legally incorrect and fiscally irresponsible, and, in my view, should not be sustained.
Appellants’ position, which requires that Bay take a reduction only in the sheriffs’ portion of his retirement in order to provide for benefits for his spouse upon his death, is reasonable and entitled to deference. It best explains the concept of eligibility as used in Subsection (2) of the coordination statute and harmonizes the statute with the provi *273 sions of the sheriffs’ and police officers’ retirement systems. Bay could provide for survivors benefits through either of the options suggested under the sheriffs’ retirement fund and his wife would always receive the $202 monthly from the police officers’ retirement fund after Bay’s death.
MR. CHIEF JUSTICE HASWELL, dissenting:
I concur in the foregoing dissent of Mr. Justice Gulbrandson.
MR. JUSTICE WEBER, dissenting:
I concur in the foregoing dissent of Mr. Justice Gulbrandson.